## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DIAZ, et al., | ) | 3:18-CV-01113 (KAD) |
| *Plaintiffs*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF HARTFORD POLICE | ) | |
| DEPARTMENT, et al., | ) | March 31, 2021 |
| *Defendants*. | ) | |

**MEMORANDUM OF DECISION RE: DEFENDANT JEREMY ALLEN'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 74); DEFENDANTS LUAN BOJKA, RICARDO COLON, WILLIAM COTE, SAMUEL CRUZ, CARLO FAIENZA, ROBERT FOGG, LUIS FRANCO, CHRISTOPHER MASTROIANNI, LUIS RUIZ, AND CARLOS TORRES' MOTION FOR SUMMARY JUDGMENT (ECF NO. 77); DEFENDANTS STEPHEN BARONE AND SEAN SPELL'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 80)**

Kari A. Dooley, United States District Judge

This civil rights action arises out of the aftermath of a car-chase during which plaintiffs Emilio Diaz ("Diaz") and Ricardo Leon Perez ("Perez") allege that they were subjected to unnecessary and excessive force by defendant police officers who effectuated their arrest. Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 ("Section 1983") and state law against Officer Stephen Barone, Detective Christopher Mastroianni, Officer Samuel Cruz, Officer Ricardo Colon, Officer Luan Bojka, Officer William Cote, Officer Carlo Faienza, Officer Luis Franco, Sergeant Sean Spell, Officer Jeremy Allen, Officer Robert Fogg, Officer Carlos Torres, and Sergeant Luis Ruiz as follows:

| Count | Cause of Action | Plaintiff | Defendants Named |
|---|---|---|---|
| **1** | Section 1983/Connecticut Constitution | Diaz | All Defendants |
| **2** | Section 1983/Connecticut Constitution | Perez | All Defendants |

| 3 | Negligence | Diaz | All Defendants |
|---|---|---|---|
| 4 | Negligence | Perez | All Defendants |
| 5 | Recklessness | Diaz | All Defendants |
| 6 | Recklessness | Perez | All Defendants |
| 7 | Negligent Infliction of Emotional Distress | Diaz | All Defendants |
| 8 | Negligent Infliction of Emotional Distress | Perez | All Defendants |
| 9 | Intentional Infliction of Emotional Distress | Diaz | All Defendants |
| 10 | Intentional Infliction of Emotional Distress | Perez | All Defendants |

Pending before the Court are three separate motions for summary judgment. Officer Allen moves for summary judgment on all Counts. (ECF No. 74). Detective Mastroianni, Officer Cruz, Officer Colon, Officer Bojka, Officer Cote, Officer Faienza, Officer Franco, Officer Fogg, Officer Torres, and Sergeant Ruiz move for summary judgment on all Counts. (ECF No. 77). Officer Barone moves for summary judgment on all Counts and Sergeant Spell moves for summary judgment on Counts Two through Ten. (ECF No. 80).[1] The Court heard oral argument on the motions on November 24, 2020.

## Facts

The following facts are undisputed unless otherwise indicated.

### Prior to the Pursuit

On June 4, 2016, Perez consumed 3-4 blunts of PCP in addition to 2-3 blunts of marijuana while Diaz consumed a six pack of beer, two blunts of marijuana laced with PCP, 4-5 bags of heroin and $10 worth of cocaine. (Mastroianni, et al., Local Rule 56(a)(1) Statement ("Mastroianni

---

[1] Defendant Spell did not move for summary judgment as to Count One. (*See* ECF No. 94 at 7).

SMF"), ECF No. 79 ¶¶ 31, 35). After consuming the drugs, Perez picked up Diaz at Perez's brother's apartment in a Toyota Camry. (*Id*. ¶ 33). The Toyota Camry was a rental, but had been reported stolen by the rental agency when Perez kept the car after the rental period expired. (*Id*. ¶¶ 38–40).

**The Pursuit**

The pursuit began after Perez beeped his horn while passing a marked police car driven by Officer Barone on Zion Street in Hartford, Connecticut. (Mastroianni SMF, ECF No. 79 ¶ 41; Barone and Spell Local Rule 56(a)(1) Statement ("Barone SMF"), ECF No. 80-2 ¶¶ 25–26). Officer Barone attempted to pull Perez over, but Perez sped away, failing to stop for stop signs or stop lights, because he knew that he was driving a stolen car. (Mastroianni SMF, ECF No. 79 ¶¶ 41–42; Barone SMF, ECF No. 80-2 ¶¶ 26–27).

When the car reached Affleck Street, it stopped. Officer Cote approached the car, opened the driver's side door, and attempted to pull Perez out of the car. (Mastroianni SMF, ECF No. 79 ¶ 43). Officer Cruz then opened the rear driver's side door to assist in Perez's removal. (*Id*. ¶ 44). Instead of exiting the car, Perez shifted the car into reverse and stepped on the gas. (*Id*. ¶ 45). Officer Cruz was hit by an open door and sustained a left knee injury. (*Id*. ¶ 46). Perez, accompanied by Diaz, left the scene of the attempted stop, again, at a high rate of speed. (Barone SMF, ECF No. 80-2 ¶ 44).

As the pursuit continued, Perez drove recklessly despite there being traffic, pedestrians, and children on bicycles. (Mastroianni SMF, ECF No. 79 ¶¶ 49–50; Barone SMF, ECF No. 80-2 ¶ 49). Diaz did not ask Perez to slow down, to stop the vehicle, or to be let out of the vehicle. (Mastroianni SMF, ECF No. 79 ¶ 60). Eventually, West Hartford police deployed stop sticks to deflate the car's tires though Perez continued to drive on the tire rims. (Mastroianni SMF, ECF

No. 79 ¶¶ 56–57; Barone SMF, ECF No. 80-2 ¶¶ 56–57). Soon thereafter, the pursuit ended in the vicinity of 800 Flatbush Avenue in West Hartford. (Mastroianni SMF, ECF No. 79 ¶ 59; Barone SMF, ECF No. 80-2 ¶ 61). In his last effort to evade apprehension, Perez struck multiple police cruisers. (Barone SMF, ECF No. 80-2 ¶ 61).

**After the Pursuit**

After the Camry was stopped and boxed in by police vehicles, the parties' versions of events diverge. Specifically, the parties disagree as to whether Perez and Diaz actively resisted arrest following the stop thereby rendering the use of force necessary, or whether they surrendered themselves to the police, obviating the need for force. The following facts, however, are undisputed unless otherwise indicated.

**Arrest of Diaz**

After the pursuit, Officer Bojka broke open the passenger side window with his baton. (Mastroianni SMF, ECF No. 79 ¶ 136). Before Diaz exited the car, Officer Bojka struck Diaz multiple times with the baton, one strike of which may have connected with Diaz's forehead. (*Id*. ¶ 137).

After Diaz exited the car, Officer Colon struck Diaz in the head with closed fists, (*id*. ¶ 147), and Officer Allen deployed his taser on Diaz, (Allen Local Rule 56(a)(1) Statement ("Allen SMF"), ECF No. 74-2 ¶ 12). According to Diaz, Officer Allen tased him in the back while he was flat on the ground facedown. (*Id*. ¶¶ 47–48). Thereafter, Officer Colon kicked Diaz, (Mastroianni SMF, ECF No. 79 ¶ 148), and Officer Fogg struck Diaz's right shoulder with his right foot and used his knee to pin Diaz's shoulder to the ground, (*id*. ¶ 102). While Diaz was on the ground, Detective Mastroianni applied foot strikes to Diaz's back/torso area until other officers were able to handcuff him. (*Id*. ¶ 130).

4

After Diaz was handcuffed and kneeling in the grass, Sergeant Spell "used his foot onto the lower back side of Diaz's head or shoulder area to force him onto the ground." (Barone SMF, ECF No. 80-2 ¶¶ 90, 95).[2] Eventually, Diaz was taken by ambulance to the hospital. (*Id.* ¶ 97).

**Arrest of Perez**

While still in the car, Perez testified that he was hit in the forehead with a baton. (Perez Dep., ECF No. 84-4 at 177). After officers removed[3] Perez from the car, non-party Detective Abhilash Pillai, Officer Cote, and Officer Barone placed Perez on the ground. (Barone SMF, ECF No. 80-2 ¶¶ 69, 71). Officer Faienza then tased Perez, which enabled Detective Pillai and Officer Barone to handcuff him. (Mastroianni SMF, ECF No. 79 ¶¶ 95–96; Barone SMF, ECF No. 80-2 ¶ 79). Before Perez was handcuffed, Officer Cote kicked Perez in the shoulder twice and on the right side of his face once and Officer Barone struck his torso multiple times with closed fist strikes. (Mastroianni SMF, ECF No. 79 ¶ 123; Barone SMF, ECF No. 80-2 ¶ 77).

After Perez was apprehended, Officer Franco escorted Perez to the hospital in an ambulance. (Mastroianni SMF, ECF No. 79 ¶ 113). On the ride to the hospital, Officer Franco claims that he used the heel of his hand to turn Perez's face away from him to prevent Perez from spitting at him. (*Id.* ¶ 114).[4] At the hospital, Perez claims that Officer Franco punched him while he was handcuffed to the hospital bed. (ECF No. 84 at 6–7).

---

[2] According to plaintiffs, "Defendant Spell gratuitously, intentionally, and willfully stomped Plaintiff Diaz's head into the ground as he lay face down, prone, with his hands cuffed behind his back." (Plaintiffs' Local Rule 56(a)(2) Statement ("Plfs.' SMF"), ECF No. 84-11 at 88). Having viewed the dashcam video from this event, the plaintiffs' description appears more apt. In Defendant Spell's reply in support of his motion for summary judgment, Spell argues that the dashcam video is not authenticated and that plaintiffs have not presented any affidavits or other admissible evidence to identify the people depicted in the video. (ECF No. 94 at 6). The Court's decision does not turn on the content of the video and the Court does not therefore resolve this evidentiary claim.

[3] The record evidence is not clear as to whether Perez was physically removed from the car or whether he exited the car on his own or in response to officer commands.

[4] Perez argues that he did not spit at Officer Franco in the ambulance. (ECF No. 84 at 6 (citing Perez Dep., ECF No. 84-4 at 142)).

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law," while a dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Significantly, the inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id*. at 250. As a result, the moving party satisfies his burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case" at trial. *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curiam*) (internal quotation marks omitted). Once the movant meets its burden, "[t]he nonmoving party must set forth specific facts showing that there is a genuine issue for trial[.]" *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 n.2 (2d Cir. 2013) (quoting *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish the existence of a disputed fact. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009); *accord Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations omitted; internal quotation marks omitted). Nor will wholly implausible claims or bald assertions that are unsupported by evidence. *See Carey v.*

*Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). Importantly, "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Adamson v. Miller*, 808 F. App'x 14, 16 (2d Cir. 2020) (summary order) (internal quotation marks omitted). "Corroboration, though helpful, is not essential; 'a § 1983 plaintiff's testimony alone may be independently sufficient to raise a genuine issue of material fact.'" *Id.* (quoting *Bellamy v. City of New York*, 914 F.3d 727, 746 (2d Cir. 2019)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Discussion**

### Preliminary Matters

Through the briefing and argument on the motions for summary judgment, the scope and nature of the plaintiffs' claims narrowed significantly. The Court has been, and is therefore, able to resolve many of the issues raised in summary fashion. First, the Court granted summary judgment in favor of Defendants Luis Ruiz, Carlos Torres, and Samuel Cruz on all Counts because

plaintiffs did not contest entry of judgment in their favor. (ECF No. 98). Next, as confirmed at oral argument, each defendant only interacted with one of the plaintiffs even though each defendant was named by both plaintiffs on a failure to intervene theory of liability. But plaintiffs acknowledged that they did not brief and therefore abandoned their Section 1983 failure to intervene theory of liability. *Lami v. Stahl*, No. 3:05-CV-1416 (MRK), 2007 WL 3124834, at *1 (D. Conn. Oct. 25, 2007) ("It is well settled that a failure to brief an issue is grounds to deem the claim abandoned."). Accordingly, absent objection, the Court granted summary judgment in favor of each defendant on each count asserted against that defendant by the plaintiff with whom that defendant did not interact.[5] Specifically, the Court granted summary judgment in favor of Defendants Luan Bojka, Christopher Mastroianni, Robert Fogg, and Ricardo Colon as to Counts 2, 4, 6, 8, and 10 (claims brought by Perez); in favor of Defendants Carlo Faienza, William Cote, and Luis Franco as to Counts 1, 3, 5, 7, and 9 (claims brought by Diaz); in favor of Defendant Jeremy Allen as to Counts 2, 4, 6, 8, and 10; in favor of Defendant Sean Spell as to Counts 2, 4, 6, 8, and 10; and in favor of Defendant Stephen Barone as to Counts 1, 3, 5, 7, and 9. (ECF No. 98).

In addition, at oral argument, plaintiffs confirmed that they have abandoned their claims brought pursuant to the Connecticut State Constitution.

### Plaintiffs' Deposition Testimony

The Court also addresses, as a preliminary matter, the question of whether the plaintiffs should be permitted to rely upon their own deposition testimony in opposing these motions for summary judgment. In the analysis below, plaintiffs' deposition testimony is central to determining if a genuine issue of material fact exists as to whether plaintiffs actively resisted arrest,

---

[5] To the extent plaintiffs bring a Section 1983 failure to intervene theory of liability against those defendants with whom they interacted, plaintiffs have also failed to brief and, therefore, abandoned this theory of liability.

thus necessitating the force used. Some defendants argue that the Court should not consider plaintiffs' deposition testimony because it is so inherently unreliable as to render it inadmissible given plaintiffs' admitted drug use and Perez's admitted inability to recall much of the events surrounding the pursuit and the arrest. While there may be extraordinary circumstances under which such testimony might be properly challenged, this is not that case. Whether the plaintiffs were under the influence at the time of the arrest, or whether their recollections are imperfect, are considerations which go to the weight of their testimony. And the Court must consider plaintiffs' deposition testimony, not to weigh its credibility but to determine whether, if credited, it creates a genuine issue of material fact in dispute. To do otherwise would be to improperly engage in credibility determinations forbidden when deciding motions for summary judgment. *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) ("In reviewing the evidence and the inferences that may reasonably be drawn, the court may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (internal quotation marks, citations, alterations and emphasis omitted)). In fact, the Court must resolve questions of credibility in the plaintiffs' favor. *Id*. at 246.

**Section 1983 – Excessive Force**

Plaintiffs allege that defendants violated their Fourth Amendment rights, as incorporated against the states by the Fourteenth Amendment, *see Tenenbaum v. Williams*, 193 F.3d 581, 602 n.14 (2d Cir. 1999), by their excessive use of force during plaintiffs' arrest on June 4, 2016. "The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Jamison v. Metz*, 541 F. App'x 15, 19 (2d Cir. 2013) (summary order) (internal quotation marks omitted). "A police officer violates the Fourth

Amendment if the amount of force he uses in effectuating an arrest is objectively unreasonable in light of the facts and circumstances confronting the officer." *Lennox v. Miller*, 968 F.3d 150, 155 (2d Cir. 2020) (internal quotation marks and alterations omitted).

"Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). More specifically, "[a] determination of whether the force used was reasonable requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Miller*, 968 F.3d at 155. (internal quotation marks omitted). Importantly, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Thus, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 396–97. "In sum, the standard to be applied in determining whether the amount of force used exceeded the amount that was necessary in the particular circumstances is reasonableness ***at the moment***." *Rogoz*, 796 F.3d at 247 (emphasis added; internal quotation marks omitted). "In light of the fact-specific nature of the inquiry on an excessive force claim, granting summary judgment against a plaintiff on such a claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was

objectively unreasonable." *Miller*, 968 F.3d at 155 (internal quotation marks and alterations omitted).

As to these claims, all defendants argue that they are entitled to qualified immunity. "[Q]ualified immunity protects government officials from suit if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The shield of qualified immunity insulates law enforcement officials from liability in their individual capacities unless the plaintiff demonstrates "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ganek v. Leibowitz*, 874 F.3d 73, 80 (2d Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow*, 457 U.S. at 818)). However, "[i]n this Circuit, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Southerland v. City of New York*, 680 F.3d 127, 141 (2d Cir. 2012) (quoting *Taravella v. Town of Wolcott*, 599 F.3d 129, 134 (2d Cir. 2010) (brackets omitted)). Thus, "a defendant is entitled to summary judgment on qualified immunity grounds when no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant to believe that he was acting in a fashion that did not clearly violate an established federally protected right." *Thomas v. Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (internal quotation marks, citations, and alterations omitted). Accordingly, "[s]ummary judgment on qualified immunity

grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Id*.

Given these applicable legal principles, it is clear that in an excessive force case, the issue of qualified immunity necessarily overlaps considerably with the question of liability on the underlying claim, as both require an assessment of the objective reasonableness of the arresting officer's conduct. *See Cowan ex rel. Est. of Cooper v. Breen*, 352 F.3d 756, 764 n.7 (2d Cir. 2003) (noting that, in some excessive force cases, the qualified immunity and Fourth Amendment issues converge on one question: "Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed was lawful.").

### The Arrest at Flatbush Avenue

Courts have held that the use of force after a suspect has surrendered is excessive and, therefore, violates the Fourth Amendment. For example, in *Jamison*, plaintiff alleged that defendant-police officers used excessive force "when they shot at him multiple times, causing injury, as he fled following a high-speed car chase." 541 F. App'x at 17. According to the officers, plaintiff struck an officer with his car, "fired on the officers, and refused to comply with the officers' orders to drop his gun and stop running." *Id*. Nevertheless, the Second Circuit found that plaintiff's verified complaint and a witness affidavit were sufficient to raise "a genuine dispute . . . as to whether [plaintiff] had surrendered and was no longer a threat when [the defendants] employed deadly force." *Id*. at 19. Significantly, the court found that under plaintiff's version of events, in which he surrendered before the officers' application of force, "the officers lacked probable cause to believe that [plaintiff] posed a serious threat to the officers or to others, and the decision to use force was not objectively reasonable." *Id*. Thus, even though "other evidence in the record support[ed] the officers' account, and a reasonable jury may well accept their version

of events," the court reversed the district court's grant of summary judgment on plaintiff's excessive force claim. *Id*. at 17, 19. The court further found that the officers were not entitled to qualified immunity because it was "clearly established law that it is objectively unreasonable to use deadly force on a suspect who has fully surrendered[.]" *Id*.

Similarly, in *Hemphill v. Schott*, the plaintiff brought an excessive force claim against, among others, a police officer who shot him prior to his arrest for armed robbery. 141 F.3d 412, 414 (2d Cir. 1998). There, the police officer claimed that plaintiff led the police on a chase and "made furtive motions at his waist, as if to draw a weapon, immediately before the shooting." *Id*. at 416. The police officer also claimed that he gave advance warning to the plaintiff of his intention to use deadly force. *Id*. In contrast, plaintiff claimed that he did not evade the police, that he stopped and raised his hands in the air when commanded, and that he was not provided advance warning by the police officer before the shooting. *Id*. at 417. Accepting plaintiff's version of events "immediately preceding the shooting," the Second Circuit found that the officer's "alleged decision to use potentially deadly force upon a suspect who stopped and raised his arms in the air when commanded to do so does not qualify as reasonable[.]" *Id*. Accordingly, the court held that the district court erred in entering summary judgment in favor of the officer "[b]ecause summary judgment based either on the merits or on qualified immunity requires that no dispute about material factual issues remain[.]" *Id*. at 418.

### *Diaz (Count One as against Defendants Allen, Bojka, Mastroianni, Fogg, and Colon)*

Here, viewing the evidence in a light most favorable to Diaz, Diaz fully surrendered when the car stopped on Flatbush Avenue. Indeed, at his deposition, Diaz repeatedly testified that he put his hands up when the car stopped. (Diaz Dep., ECF No. 84-3 at 160 ("Well, after the car went over the Stop Sticks, we was on Flatbush. The car came to a stop. To the best of my knowledge I

put my hands up so the officers could see my hands."); 162–63 (same); 163–64 (Q: "Do you recall police officers coming to your side of the vehicle and issuing commands to get out of the car?" A: "He didn't say nothing. I was willing to comply with the officer. I was ready to do anything. He didn't say nothing. I had my hands up. He tried opening the door. He didn't say 'Unlock the doing [sic] door,' nothing. He busted the window out."); 198 ("[W]hen the car came to a stop, I put my hands up and was waiting for directions. I didn't hear anything."); *see also id.* at 200, 236). Diaz also repeatedly testified that he did not otherwise resist arrest while being apprehended by the defendants. (*Id.* at 202–03 (testifying that he lied facedown on the ground with his hands at his side after being yanked out of the car); 205 (testifying that he did not do anything to resist arrest while on the ground); 262 (testifying that he did nothing to threaten officers on the scene after he had his hands up); 267 (testifying that he did not resist the officers' efforts to place him into handcuffs)).

By Diaz's account, it was therefore after he surrendered that Officers Bojka, Allen, Fogg, Colon, and Detective Mastroianni used the force described above, i.e., baton strikes, a taser deployment, punches and kicks, while effectuating his arrest. Although defendants offer evidence that Diaz was actively resisting arrest and that the force was therefore necessary, the Court must view the above facts in a light most favorable to Diaz. Thus, given Diaz's testimony that he fully surrendered after the car stopped at Flatbush Avenue, the Court finds that there is a genuine issue of material fact as to whether the defendants' use of force against Diaz was reasonable under the circumstances. *See Jamison*, 541 F. App'x at 19; *Hemphill*, 141 F.3d at 416–18; *see also Getlin v. Zoll*, 707 F. Supp. 2d 369, 378–79 (E.D.N.Y. 2010) (finding that defendant police officer was not entitled to summary judgment or qualified immunity on an excessive force claim because he did not have probable cause to believe that the plaintiff posed a significant threat after the plaintiff

stopped his car and put his hands in the air and because it was unreasonable for the officers to drag the non-resisting plaintiff's body through the window and to kick and punch him); *compare MacLeod v. Town of Brattleboro*, 548 F. App'x 6, 8–9 (2d Cir. 2013) (summary order) (finding that the officer's use of a taser was not excessive force where plaintiff contravened "clear, repeated instructions that he acknowledge[d] he understood"). Therefore, Officers Bojka, Allen, Fogg, Colon, and Detective Mastroianni are not entitled to summary judgment with respect to Diaz's Section 1983 claim for excessive force.

### Perez (Count Two as to Defendants Barone, Faienza, Cote and Franco)

Viewing the evidence in a light most favorable to Perez, Perez initially signaled his intent to surrender when the car stopped at Flatbush Avenue by raising his hands in the air. But there is no evidence to suggest that Perez continued in that vein or that he did not thereafter resist arrest when he exited the vehicle. After the car stopped, Perez testified that he put his hands up. (Perez Dep., ECF No. 84-4 at 128 ("I remember putting my hands up in the air when I went to completely stopped."); 135 (When the car stopped, "I just put my hands up in the air.")). Though, after putting his hands up, Perez does not remember much else. (*Id*. at 135–36 (Q: "All right. What do you remember about what happened when the car finally stopped?" A: "I just put my hands up in the air. All of a sudden, I just don't remember nothing from there." Q: "Okay. So you—when the car stopped you remember putting your hands up in the air?" A: "From there I just don't remember nothing, what happened all from there."); 136 (Q: "Okay. What do you recall about police officers approaching the car?" A: "I guess it was like, 'Freeze. Don't move.' After that I don't remember everything else." Q: "Do you have any recollection of how you got out of the car?" A: "I don't remember. No."); 137 (Q: "Do you have a recollection of anything between when the car stopped and when you woke up at Hartford Hospital?" A: "Just woke up at Hartford Hospital being scared,

like wow.")). More specifically, Perez testified that he does not remember anything after officers broke the driver's side window and hit him with a baton. (*Id*. at 175, 176 (Officers "broke the window, hit me with a baton, and after that I don't remember nothing else."); 177 (A: "I got hit with the baton stick, and after that I don't remember nothing else." Q: "You got hit with a baton stick while you were seated in the driver's seat?" A: "Yes.")). Perez' inability to recall the remainder of the events of his arrest notwithstanding, the defendants have submitted substantial evidence, unanswered by Perez, that Perez continued his efforts to avoid apprehension and resisted arrest after he exited the car. (*See*, *e.g.*, Barone Aff., ECF No. 80-3 ¶¶ 38, 40, 44; Faienza Incident Report, ECF No. 79-3 at 60 ("[Perez] was actively resisting officers by flailing his arms and pushing off the ground."); Cote Incident Report, ECF No. 79-3 at 69 ("[Perez] exited the vehicle ignoring numerous verbal commands given by officers to stay in the vehicle. [Perez] took a fighting stance and appeared to be looking for an avenue of escape.")). Therefore, viewing the evidence in a light most favorable to Perez, the use of excessive force claim would be limited to force used while Perez was still in the car having signaled an intention to surrender. But Perez offers no evidence identifying the officer who allegedly struck him with a baton while he was inside the car.[6]

And the uncontradicted evidence is that Officers Faienza, Cote, and Barone used force to effectuate Perez's arrest at Flatbush Avenue only after Perez exited the car and was actively resisting arrest. Specifically, Officer Faienza deployed a taser on Perez after he exited the car because he failed to follow verbal commands, (Faienza Incident Report, ECF No. 79-3 at 58–60),

---

[6] Although plaintiffs appear to argue that Officer Barone struck Perez in the head with a baton while Perez was still in the car with his hands up, there is no evidence that suggests this happened. Perez testified that he was struck in the head with a baton while in the car, but he also testified that he did not know who struck him. (Perez Dep., ECF No. 84-4 at 177). Further, the Internal Affairs investigation report cited by plaintiffs only indicates that Officer Barone struck Perez with his fist while Perez was already out of the car. (ECF No. 84-1 at 23).

Officer Cote applied foot strikes to Perez after Perez fell to the ground because he continued to thrash about and did not follow commands to stop resisting, (Cote Aff., ECF No. 93 at 25–26, ¶¶ 8, 12), and Officer Barone issued closed fist strikes to Perez's right torso while Perez was on the ground because Perez would not show his hands to the officers, (Barone Aff., ECF No. 80-3 ¶¶ 43–45). Therefore, because there is no evidence that Officers Faienza, Barone, or Cote used any force on Perez while he was in the car; and Perez does not offer any evidence which counters the defendants' sworn statements that the force was necessary to effectuate his arrest given his active resistance after he exited the car, Perez has not raised a genuine issue of material fact as to whether these defendants acted reasonably under the circumstances.[7] *See Rogoz*, 796 F.3d at 246 ("Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (internal quotation marks and citation omitted)); *see, e.g.*, *Crowell v. Kirkpatrick*, 400 F. App'x 592, 594–95 (2d Cir. 2010) (summary order) (finding application of taser objectively reasonable where arrestees were actively resisting arrest). Accordingly, Officers Barone, Faienza, and Cote are entitled to summary judgment with respect to Count Two, the Section 1983 claim alleging excessive force.

### Defendant Franco

Perez also claims that Officer Franco punched him while he was being transported to Hartford Hospital in an ambulance. However, Perez offers no evidence to support this claim. Rather, Perez's claim appears to be based on his interpretation of Officer Franco's statement of material facts, which indicates that Officer Franco used the heel of his hand to turn Perez's face in the other direction after Perez attempted to spit at him. (Mastroianni SMF, ECF No. 79 ¶ 114; *see*

---

[7] The Court notes that Perez does not assert that, even under the defendants' version of events, a genuine issue of material fact exists as to whether the force used was reasonable.

*also* Franco Incident Report, ECF No. 79-3 at 66 ("I then placed the heel of my right palm over [Perez's] face and forcefully pushed him away from my direction to avoid any more of his blood from being spit at me.")). Perez argues that he did not spit at Officer Franco, but in making this argument, Perez cites to his deposition testimony in which he states that he does not remember what happened in the ambulance. (Perez Dep., ECF No. 84-4 at 142 (Q: "Do you have any recollection of spitting bloody saliva at Officer Franco who was in the ambulance with you?" A: "I don't remember. No.")). In fact, Perez testified that he had no recollection of the ambulance ride. (*Id.* (Q: "Mr. Perez, do you have any recollection of the ambulance ride from the end of the car chase to Hartford Hospital? Do you have any recollection of that?" A: "No.")). Thus, the record indicates, and there is no genuine dispute, that Officer Franco pushed Perez's face away after Perez spit blood at him. Under these circumstances, no reasonable jury could find that Officer Franco's use of force was excessive. *See Graham*, 490 U.S. at 396 ("Not every push or shove . . . violates the Fourth Amendment." (internal quotation marks and citation omitted)).

At Hartford Hospital, Perez further claims that Officer Franco punched him while he was handcuffed to a bed, which Officer Franco denies. (Perez Dep., ECF No. 84-4 at 143, 180–82, 222; Franco Aff., ECF No. 93 at 34, ¶ 19). Perez described the officer that punched him as "Spanish, young." (Perez Dep., ECF No. 84-4 at 144). And, Perez submitted a picture of an officer, who he identifies as Officer Franco, allegedly fitting that description. (ECF No. 84-7).[8] There is no dispute that Officer Franco is the officer who handcuffed Perez to a bed at Hartford Hospital. (*See* Franco Aff., ECF No. 93 at 34, ¶ 17). And, in his deposition, Perez testified that he was punched while he was being handcuffed to the bed by an officer. (Perez Dep., ECF No. 84-4 at 180–81). Accordingly, a genuine issue of material fact exists as to whether Officer Franco punched Perez while he

---

[8] Officer Franco argues that the picture is not properly before the Court because Perez did not authenticate it. Whether the picture is properly before the Court does not alter the Court's analysis.

handcuffed Perez to the bed, which if proven would clearly constitute excessive force. *Lennox*, 968 F.3d at 157 (finding that, at least as of July 22, 2016, it was "clearly established by [Second Circuit] caselaw that it is impermissible to use significant force against a restrained arrestee who is not actively resisting"); *Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020) (Before April 2015, "it was clearly established in this Circuit that it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others."). Thus, Officer Franco is not entitled to summary judgment as to Perez's Section 1983 claim based on the purported punch at the hospital.

**State Law Claims**

In the Third Amended Complaint, in Counts Three through Ten, plaintiffs, in conclusory fashion, assert that their allegations also give rise to liability under the various state law claims specified. Although the defendants addressed each additional count in the motions for summary judgment, plaintiffs' response to these arguments was conclusory almost to the point of being deemed abandonment. *See Zadrowski v. Town of Plainville*, No. 3:09-CV-1367 (DJS), 2013 WL 5435491, at *8 (D. Conn. Sept. 30, 2013) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (internal quotation marks and citation omitted)). When asked whether abandonment was in fact the plaintiffs' intent, counsel advised the Court, in essence, that he viewed the state law claims as rising or falling with the Section 1983 claims. Even though these additional causes of action have different elements or might be subject to different defenses, in the absence of meaningful briefing, the Court takes counsel at his word. Accordingly, because Perez has failed to raise a genuine issue of material fact as to his Section 1983 claims against

Defendants Cote, Barone and Faienza, these defendants' motions for summary judgment are granted as to Counts Four, Six, Eight and Ten as well.

As to Defendants Allen, Bojka, Mastroianni, Fogg, Colon, and Franco, the Court must address their arguments that irrespective of the outcome on the Section 1983 claims, which have survived summary judgment as discussed above, they are entitled to summary judgment on the state law claims. The Court must also take up Defendant Spell's motion for summary judgment as to the state law claims.

### Intentional Infliction of Emotional Distress (Counts Nine, Ten)

To establish liability for intentional infliction of emotional distress, plaintiffs must show: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe[.]" *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 443 (2003) (internal quotation marks and citations omitted). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* "Courts have held that the use of excessive force can establish a claim for intentional infliction of emotional distress." *Frappier v. City of Waterbury*, No. 3:07-CV-1457 (WWE), 2008 WL 4980362, at *3 (D. Conn. Nov. 20, 2008); *see*, *e.g.*, *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 175–76 (D. Conn. 2003) (finding that plaintiff could proceed past summary judgment on an intentional infliction of emotional distress claim where a police officer hit him repeatedly with a flashlight).

Here, if the allegations of excessive force under the circumstances described by Perez and Diaz are proven, a reasonable jury could find the remaining defendants' conduct so "extreme and outrageous [. . .] as to permit recovery." *Birdsall*, 249 F. Supp. 2d at 175 (internal quotation marks and citation omitted). At the very least, because "there are genuine issues of material fact that are properly left to a jury regarding how defendants—and plaintiff[s]—acted during the arrest [and thereafter] . . . [i]t is best left upon a full trial record for a properly instructed jury to decide if [plaintiffs have] established the elements of [their claims for intentional infliction of emotional distress]." *Bussolari v. City of Harford*, No. 3:14-CV-00149 (JAM), 2016 WL 4272419, at *4 (D. Conn. Aug. 12, 2016). Accordingly, Defendants Allen, Bojka, Mastroianni, Fogg, and Colon are not entitled to summary judgment on Count Nine and Defendant Franco is not entitled to summary judgment on Count Ten, plaintiffs' respective claims for intentional infliction of emotional distress.

Similarly, Defendant Spell, who did not move for summary judgment as to Diaz's excessive force claim, is not entitled to summary judgment on Diaz's claim for intentional infliction of emotional distress. *See Frappier*, No. 3:07-CV-1457 (WWE), 2008 WL 4980362, at *3 ("Because defendants have not sought summary judgment on plaintiff's excessive force claim, the Court cannot grant summary judgment on the intentional infliction of emotional distress claim."). This is especially so where the Court, viewing the facts in a light most favorable to Diaz, must take as true Diaz's allegation that Defendant Spell gratuitously kicked him in the head after he was fully apprehended. (*See*, *e.g.*, Diaz Dep., ECF No. 84-3 at 170 ("Once they finished on the side of the car, I got handcuffed and moved over from the car. . . . Now that I'm not next to the car, this is when the other officer kicked me in the head. I'm thinking I'm gonna die. I'm crying for my life. I'm thinking I'm gonna die. He tells me if I don't stop crying, he gonna kick me again

in the head."); *see also id*. at 171 (identifying Defendant Spell as the person who kicked him in the head)).

### Recklessness (Counts Five, Six)

All remaining defendants also seek summary judgment as to plaintiffs' recklessness claims. "Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man[.]" *Doe v. Hartford Roman Cath. Diocesan Corp.*, 317 Conn. 357, 382 (2015) (internal quotation marks omitted). Although recklessness is a "state of consciousness with reference to the consequences of one's acts" it "may be inferred from conduct." *Id*. "[Recklessness] is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action." *Id*. (internal quotation marks omitted).

Here, as discussed above, there is a genuine dispute as to the nature of defendants' use of force at Flatbush Avenue and Defendant Franco's purported unprovoked punch of Perez at the hospital and therefore a genuine dispute as to whether the remaining defendants acted recklessly. *See Zadrowski*, No. 3:09-CV-1367 (DJS), 2013 WL 5435491, at *2 , *9 (finding that it is a question for the jury to determine whether the officer's conduct was reckless where the officer slammed plaintiff against a car and choked her).[9] Accordingly, Defendants Allen, Bojka, Mastroianni, Fogg, Colon, Franco, and Spell are not entitled to summary judgment on Count Five or Count Six, plaintiffs' respective claims for recklessness.

---

[9] Defendant Spell argues that his conduct did not amount to recklessness because Diaz was spitting blood at him. However, viewing the record in a light most favorable to Diaz, Diaz did not spit at Defendant Spell. (Diaz Dep., ECF No. 84-3 at 172 (Q: "Were you spitting at the time?" A: "No. I didn't raise my head. I didn't raise my head. I didn't do nothing. I kept my head down." Q: "Did you spit at any officer, any officer that night on June 4, 2016?" A: "For what? To get beat up? I ain't stupid." Q: "Were you spitting on the ground?" A: "I wasn't spitting nowhere. How am I spitting and the blood is coming straight out of my forehead dripping onto the ground?")).

**Negligence/Negligent Infliction of Emotional Distress (Counts Three, Four, Seven, Eight)**

All remaining defendants argue that they are entitled to summary judgment as to plaintiffs' negligence-based claims. Specifically, defendants argue that plaintiffs' negligence claims fail as a matter of law because their allegations involve only allegedly intentional conduct. *See Frappier*, No. 3:07-CV-1457 (WWE), 2008 WL 4980362, at *3 (Plaintiffs "may not prevail on a negligence claim when [they have] brought claims of intentional use of excessive force and intentional infliction of emotional distress."). However, "[t]he majority of courts in this District have recognized that plaintiffs may simultaneously plead negligence-based and intent-based claims arising from the same conduct." *Wilson v. Boulay*, No. 3:17-CV-00813 (JCH), 2018 WL 3596750, at *4 (D. Conn. July 25, 2018) (collecting cases). As Judge Meyer explained, "[t]he case that is most often cited by Connecticut federal courts for the proposition that § 1983 and negligence claims are incompatible is based on an interpretation of New York law that finds 'no cause of action for negligence on the part of a police officer' when making an arrest." *Bussolari*, No. 3:14-CV-00149 (JAM), 2016 WL 4272419, at *3 (internal citation omitted). In contrast, for example, "Connecticut courts have allowed for recovery under Connecticut's negligence-based municipal liability statute, Conn. Gen. Stat. § 52-577n, in cases involving allegations of excessive force by police officers." *Id*. Thus, defendants' purely legal argument fails on this point and plaintiffs may pursue negligence-based claims arising out of the remaining defendants' alleged excessive force.

Defendants further argue that they are entitled to governmental immunity pursuant to Conn. Gen. Stat. § 52-557n. The Court construes defendants' argument as seeking common law governmental immunity for municipal employees.[10] "Generally, a municipal employee is liable

---

[10] Conn. Gen. Stat. § 52-557n establishes *municipal* liability for negligent acts of employees. *See Bussolari*, No. 3:14-CV-00149 (JAM), 2016 WL 4272419, at *5.

for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts." *Mulligan v. Rioux*, 229 Conn. 716, 727 (1994). Because "[a] police officer's decision to make an arrest and the amount of force to use to effectuate an arrest are discretionary rather than ministerial decisions for purposes of considering whether the officer has immunity from a claim of negligence," *Bussolari*, No. 3:14-CV-00149 (JAM), 2016 WL 4272419, at *4, the governmental immunity applies to this case. However, there are three exceptions to the immunity: (1) "where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm"; (2) "where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws"; and (3) "where the alleged acts involve malice, wantonness or intent to injure, rather than negligence[.]" *Spears v. Garcia*, 263 Conn. 22, 36 (2003).

Here, plaintiffs assert that the "identifiable person-imminent harm exception" applies. The Court agrees. The exception requires: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." *Doe v. Petersen*, 279 Conn. 607, 616 (2006). "This imminent harm exception applies to police officers," to include "those who affirmatively act[.]" *Bussolari*, No. 3:14-CV-00149 (JAM), 2016 WL 4272419, at *4. In this case, viewing the evidence in a light most favorable to plaintiffs, the identifiable person-imminent harm exception to governmental immunity is applicable. Diaz and Perez were clearly identifiable victims to the defendants and defendants, through their respective use of force as detailed above, subjected Diaz and Perez to imminent harm. *Id.* (finding that officers knew that their conduct would likely subject plaintiff to an imminent harm where officers restrained and punched the plaintiff). Thus, there is a genuine issue of material fact remaining as to whether defendants are entitled to governmental immunity. Accordingly,

Defendants Allen, Bojka, Mastroianni, Fogg, Colon, Franco, and Spell are not entitled to summary judgment on Counts Three, Four, Seven and Eight, plaintiffs' respective negligence-based claims. The Court again stresses that plaintiffs, after given the opportunity to present their full case to a jury, must establish the elements of each respective cause of action. *Id.*[11]

**Conclusion**

For the foregoing reasons, summary judgment is GRANTED in favor of Defendants Barone, Faienza and Cote as to Counts 2, 4, 6, 8, and 10. Defendant Franco's motion for summary judgment is DENIED as to Counts 2, 4, 6, 8, and 10. Defendant Allen's motion for summary judgment is DENIED as to Counts 1, 3, 5, 7, and 9. Defendants Bojka, Mastroianni, Fogg, and Colon's motion for summary judgment is DENIED as to Counts 1, 3, 5, 7, and 9. Defendant Spell's motion for summary judgment is DENIED as to Counts 3, 5, 7, and 9. Accordingly, the only claims remaining in this action are as follows: (1) Diaz's Section 1983 claim for excessive force against Defendants Allen, Bojka, Mastroianni, Fogg, Colon, and Spell; (2) Diaz's state law claims against Defendants Allen, Bojka, Mastroianni, Fogg, Colon, and Spell for the same; (3) Perez's Section 1983 claim for excessive force against Defendant Franco based on his purported punch in the hospital; and (4) Perez's state law claims against Defendant Franco for the same.


**SO ORDERED** at Bridgeport, Connecticut, this 31st day of March 2021.


 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

---

[11] Although the Court is allowing the state law claims to proceed past summary judgment, the Court notes that the plaintiffs "may not obtain double recovery under alternative theories that are based on the same conduct and harm[.]" *Bussolari*, No. 3:14-CV-00149 (JAM), 2016 WL 4272419, at *4.